IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-02333-WDM

LLOYD LOBATO JR.,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Miller, J.

Plaintiff Lloyd Lobato Jr. (Lobato) appeals the denial of his application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security (Commissioner).  I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record.  For the reasons that follow, I conclude this case should be remanded to the Commissioner.

### Background

Lobato was born in 1957.  Administrative Record at 96.  He attended school up to the tenth grade and then obtained a GED.  *Id.* at 113, 412.  His previous work has been primarily as a cook, welder's helper, pipefitter's helper, fence erector, dishwasher, carpet cleaner, and lodge housekeeper.  *Id.* at 116-31, 393-94.

Lobato asserts that he became disabled on May 23, 2000, when he took a fall at work that twisted his knee and was in a car accident shortly thereafter, which

exacerbated the knee injury and a previous back injury. *Id.* at 108, 168.  He alleges

that he is disabled because of bulging discs in his lumbar spine, the knee injury, a neck

injury, and constant pain in his back, leg, and neck. *Id.* at 108.

Lobato's protective filing date for disability insurance and supplemental security

income benefits was August 31, 2000. *Id.* at 96-99.  After denial, Lobato requested a

hearing, which was granted. *Id.* at 53-58, 65-71.  The hearing was held before an ALJ

on September 8, 2003. *Id.* at 369-407.  Lobato was represented by counsel at the

hearing and a vocational expert (VE) testified in response to several hypothetical

questions about jobs existing in the economy that a person with some of Lobato's

restrictions might be able to perform. *Id.* at 394-407.  The ALJ issued an unfavorable

decision on October 9, 2003. *Id.* at 41-43.  Lobato filed a Request for Review with the

Appeals Council on December 4, 2003. *Id.* at 72.  The Appeals Council granted the

review and remanded the case to the ALJ on March 4, 2004. *Id.* at 92-95.

A second hearing, with a different ALJ, was held on May 17, 2005. *Id.* at 410-

27.  The ALJ also issued an unfavorable decision on June 28, 2005. *Id.* at 13-25.

Lobato's Request for Review with the Appeals Council was denied, rendering the ALJ's

determination final for purposes of this appeal   *Id.* at 6.

Medical History

Plaintiff first injured his back in 1994. *Id.* at 321.  Notes from Dr. Robert Turek

show a diagnosis of segmental dysfunction lumbar spine, lumbar strain/sprain,

segmental dysfunction sacroiliac, and radiculitis. *Id.*  An orthopedic specialist, Dr.

Philip Macon, diagnosed lumbar myofascial irritation and left sided sciatica with

2

probable L5 radiculopathy.  *Id.* at 351.  Lobato reported pain and numbness and was kept off work for some time.  On December 6, 1994, Dr. Macon placed Lobato on maximum medical improvement, noting that he had improved but still had symptoms. *Id.* at 342.  Lobato saw several other medical providers in 1995.  An MRI taken in January 1995 showed right lateral wedging of the L-3 vertebra, mild disc dessication at L4-L5 and L5-S1, and posterial lateral to lateral focal bulge at L5-S1.  *Id.* at 336.  He was given a 21% impairment rating by one examiner (*id.* at 339) and a 15% impairment rating by another (*id.* at 332).

Lobato was seen in the emergency room after his motor vehicle accident on May 28, 2000, where he complained of back, neck, and right shoulder pain.  *Id.* at 168-69. The emergency room physician diagnosed cervical strain and left knee injury, possibly a meniscus tear or small avulsion fracture.  *Id.* at 168, 170.  Lobato was then seen by Dr. Doug Bagge in June 2000.  *Id.* at 233.  The examination showed that Lobato had difficulty bending, had degenerative changes in his back and shoulder, and had problems with his hand.  *Id.* at 232.  An MRI of Lobato's knee showed Pellengri-Stieda disease (calcific density or bony growth) involving the medial meniscus, increased volume of fluid, and features of lateral plica formation.  *Id.* at 216, 232.  Dr. Bagge recommended physical therapy.  *Id.* at 232.  An MRI in July 2000 showed disc dessication, bulging disks at L4-5, narrowing of the neural foramen with possible mild irritation of the nerve root.  *Id.* at 210-11, 231.  Lobato had an epidural steroid injection in September 2000, but reported continued discomfort with sitting and radiating pain in his knee.  *Id.* at 230.  Lobato's back and leg pain continued through 2000 and he was

3

kept off work.  *Id.* at 229.  Starting early 2001, on Dr. Bagge's recommendation, Lobato began using a TENS unit for his back, which has apparently provided him some relief. *Id.* at 227-28. Throughout 2001, Dr. Bagge's records show that Lobato was reporting pain in his back, but that the knee was getting better.  *Id.* at 227-228.

In April 2001, Dr. Kent Britton performed a consultative evaluation at the request of Social Security.  *Id.* at 224-26.  Dr. Britton reported tenderness in the lower back, a positive straight leg raise test lying down, ability to bend forward only to about 45 degrees, but no limitations or tenderness around his neck.  *Id.* at 225.  Dr. Britton's overall assessment was that Lobato showed evidence of "degenerative changes in the neck and lumbar spine . . . limitations in back movement."  *Id.*  He also opined that Lobato would require "frequent changes in position from sitting to standing, and with his back pain and is unable to tolerate much work according to his history."  *Id.* at 226. The same month, a non-examining DDS physician determined Lobato's residual functional capacity, noting degenerative disc disease and knee pain.  *Id.* at 159.  He opined Lobato could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk six hours in an eight hour day, sit six hours in an eight hour day, and had no limitations in pushing, pulling.  *Id.* at 160.  He had few positional restrictions, no visual, manipulative, or communicative limitations, and few environmental restrictions. *Id.* at 162-63.

Dr. Bagge opined that Lobato had reached maximum medical improvement for his  injuries in June 2001, but recommended that Lobato continue pain medication and use of the TENS unit.  *Id.* at 227.  Lobato was also discharged from physical therapy.

*Id.* at 304.

In August 2001, Dr. Victor Lopez evaluated Lobato for an impairment rating on his left knee. *Id.* at 250-251. He diagnosed aggravation of prior degenerative changes but opined that Lobato would have no work restrictions from the knee. *Id.* at 251. In November 2001, Dr. Lopez examined Lobato's lumbar spine. *Id.* at 247-49. He noted that the MRI showed disc bulging and narrowing of the neural foramen and opined that Lobato could work in the sedentary to light medium category. *Id.* at 248.

Lobato started seeing Dr. Allen Burnside in February 2002. *Id.* at 261. Dr. Burnside's notes reflect Lobato had limited range of motion and muscle tenderness. *Id.* at 259-60. He prescribed painkillers and weight loss. *Id.* In August 2002, John McAward, a physical therapist, performed a functional capacity evaluation (FCE), which included review of medical records and objective tests. *Id.* at 263-92. The FCE showed that Lobato could not lift any weight from floor to knuckle level or from 12 inches to knuckle, but could lift eight pounds from knuckle to shoulder or shoulder to overhead. *Id.* at 265, 271. Lobato had some ability to push and pull 10-20 pounds, could sit 30 minutes at a time, stand 45 minutes at a time, bend occasionally, reach overhead and forward frequently, could not climb ladders, squat or kneel, and could climb stairs and walk occasionally. *Id.* at 271. McAward also noted that Lobato relied heavily on a cane and occasionally had periods when he needs to stay in bed due to pain. *Id.* at 269. On December 16, 2002, Dr. Burnside reviewed the FCE and concurred that the "projected limitations are reasonable given the findings." *Id.* at 294. Dr. Burnside saw Lobato again on December 17, 2002 and observed that Lobato's left

leg was locked into extension, his back range of motion was very limited, and he was

limping.  *Id.* at 293.

### Administrative Proceedings

At the first hearing, Lobato testified about his past work, pain, and daily

activities.  In addition, a vocational expert testified about jobs existing in the economy

that a person with Lobato's limitations might be able to perform.  The first ALJ denied

Lobato's application at Step 5, finding Lobato to be not fully credible because his

impairment was "mild" and he did a lot of activities inconsistent with his alleged

disabling pain.  *Id.* at 49.  In addition, the ALJ determined that Dr. Burnside's limitations

were "not dispositive."  *Id.* at 47.  The ALJ found that Lobato retained an RFC that

permitted him to do less than the full range of light work, but that he could work as an

assembler, cashier, or inspector.  *Id.* at 51.

In its order remanding the first ALJ's decision, the Appeals Council found that

the ALJ's rejection of Dr. Burnside's adoption of the FCE overlooked the fact that Dr.

Burnside was the most recent treating source.  In addition, Dr. Burnside's notes and the

FCE described Lobato as being significantly more impaired than previous examining

sources had observed.  In light of this disparity, the Council remanded and specifically

instructed the ALJ to: (1) obtain additional evidence concerning the claimant's

musculoskeletal impairments in order to complete the administrative record, including,

if warranted and available, a consultative orthopedic examination and medical source

statements about what the claimant can still do despite the impairments; (2) further

evaluate the claimant's subjective complaints and provide rationale in accordance with

regulations; (3) give further consideration to the claimant's maximum residual functional

capacity during the entire period at issue and provide rationale with specific references

to evidence of record in support of the assessed limitations, including examining

opinions and explaining the weight given to opinion evidence and, as appropriate,

requesting additional evidence and further clarification about what claimant can still do

despite his impairments; (4) if needed, obtain evidence from a medical expert to clarify

the nature and severity of the claimant's impairments; (5) if warranted by the expanded

record, obtain supplemental evidence from a vocational expert to clarify the effect of

the assessed limitations on the claimant's occupational base.  *Id.* at  94-95.

It does not appear that any further consultative examinations were ordered.  At

the second hearing, Lobato submitted records from visits to Dr. Burnside in January,

July, and December 2004.  The medical notes include the same symptoms: no flexing

of the left leg, limited range of motion in the back, tense and tender muscles in the back

area, refills of the pain medication, and a suggestion that Lobato go back to physical

therapy.  *Id.* at 357-60.

At the second hearing, Lobato testified that he had tried to do some work

mowing lawns but wasn't able to do much.  *Id.* at 413-14.  He reported a high level of

pain in his left knee (7-8 without medication) and that his knee frequently "goes out."

*Id.* 415-16.  He testified that he uses a back brace and cane, that his back goes out,

and that he has more pain with bending and kneeling.  *Id.* at 416-18.  He still uses the

TENS unit and physical therapy, pain medication, hot water soaks, ice packs, and a

heating pad.  *Id.* at 420-421.  He still needs to alternate positions regularly.  *Id.* at 422.

His doctor has recommended physical therapy but he can't afford it.  *Id.*  He described

the same daily activities as he did in the first hearing.  *Id.* at 423-25.  A VE appeared

but was asked no questions by the ALJ.

The second ALJ issued a decision on June 28, 2005.  *Id.* at 14-19.  The ALJ

made the following findings:

1.     Lobato had not engaged in substantial gainful activity since June 23, 2000.  *Id.* at 24.

2.     Lobato had severe impairments, specifically degenerative disc disease and a medial cruciate ligament injury to the left knee.  *Id.* at 18, 24.

3.     None of the impairments, alone or in combination, met the criteria of any listed impairment.  *Id.* at 19.

4.     In determining Lobato's residual functional capacity, the ALJ found Lobato's testimony of disabling pain not credible.  *Id.* at 20.  The ALJ stated that he considered Lobato's daily activities, the location, duration, frequency, and intensity of the pain, the precipitating and aggravating factors, medication, and other measures.  *Id.*  In particular, the ALJ found that the symptoms were not consistent with the findings of lumbar spine MRI, which identify only "slight" bulging of the disk and narrowing of the neural foramen.  *Id.* at 21.  He also noted that Lobato had been released in 1994 with the ability to lift up to 50 pounds, that Dr. Lopez had found the knee to be essentially "asymptomatic" and that the medical findings did not support the subjective complaints.  *Id.* The ALJ also noted that Lobato does some household chores and that the alleged need to lie down is not reflected in the treatment records.  *Id.*  The ALJ further considered that Lobato's pain medications are effective and that Lobato has not required ongoing medical treatment other than six-month refills of his prescriptions.  *Id.*  Finally, the ALJ stated that Lobato sat at the hearing with his knees flexed and walked without difficulty or aids.  *Id.*

5.     The ALJ found the RFC evaluation by the non-examining DDS physician to be supported by and consistent with the record as a whole.  *Id.* at 20. The ALJ found that Dr. Burnside's opinion on Lobato's limitations to be "not dispositive" because they were inconsistent with his own clinical notes, Dr. Burnside is a GP and not a specialist and did not have other medical records during the first two visits, and Dr. Burnside did not offer

specific work restrictions but simply stated Lobato was "unemployable." *Id.* at 21-22.  The ALJ also discounted the evaluation by the physical therapist because a physical therapist is not recognized as an acceptable medical source and the report was inconsistent.  *Id.* at 22.

6.      The ALJ found that Lobato had a residual functional capacity to perform light work with standing for 45-60 minutes at a time up to five hours a day, walk four to five blocks at a time up to one hour per day, sit 45-60 minutes at a time up to five hours a day, occasionally climb, balance, stoop, kneel on the right knee, reach overhead, walk over rocky surfaces, operate foot controls with his right foot, lift no more than 20 pounds, frequently lift and carry up to 10 pounds, with no crouching, crawling, working around open machinery or heights, climb ladders ropes, scaffolding, and with avoidance of concentrated exposure to temperature extremes.  *Id.* at 22.

7.      Lobato could not perform his past relevant work.  *Id.* at 23.  However, apparently relying on the testimony of the vocational expert at the first hearing, the ALJ found that Lobato was capable of performing job existing in significant numbers in the economy.  *Id.*

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards.  *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Id.* (citations omitted).  The failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal.  *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

Lobato makes four arguments on appeal: (1) that the ALJ failed to comply with

the remand order from the Appeals Council; (2) the ALJ erred in assessing credibility, complaints of pain, and testimony regarding functional limitations; (3) the ALJ erred in giving no weight to the treating physician; (4) the ALJ failed to properly consider all of the impairments in determining the RFC; (5) the hypothetical questions to the VE did not include all of Lobato's limitations and are inconsistent with the ALJ's findings.

1.      Failure to comply with remand order

Lobato argues that the ALJ failed to obtain the additional evidence ordered by the Appeals Council concerning Lobato's musculoskeletal impairments and other related information.  Although Lobato himself submitted additional records from Dr. Burnside, his most recent treating physician, the ALJ did not order any additional consultations or evaluations.  Dr. Burnside did not conduct any additional tests or evaluations to determine the extent of Lobato's impairments.

In response, the government argues that the ALJ's determination is supported by substantial evidence and that the ALJ was entitled to rely on the evidence from Dr. Burnside showing that Lobato had not required medical care or significant pain medication as a way of reconciling the disparity between the various assessments of Lobato's remaining abilities.  The consultative examination was therefore unnecessary. I disagree.  The main thrust of Dr. Burnside's clinical notes from 2004 is that Lobato's condition is basically unchanged; there is no additional evidence of how much functionality Lobato retains.  The regulations provide that a consultative examination should be ordered if "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical

source." 20 C.F.R. 416.919a(b)(4).  The conflict identified by the Appeals Council was not resolved by the updated records from Dr. Burnside.  Accordingly, remand is appropriate to address this omission.

2.      Error in assessing credibility

Lobato argues that the ALJ's credibility determination was in error because (1) the ALJ selectively gave credence to one or two doctors who described the back disorders as "slight," whereas the record as a whole demonstrates several lumbar spine disorders; (2) the record does not support the ALJ's determination that Lobato's knee was "asymptomatic" and did not limit his work; (3) Lobato's daily activities are not inconsistent with the level of pain he described; (4) the ALJ failed to consider other factors supporting Lobato's reports of pain.  In response, the government argues that Lobato is simply asking the court to reweigh the evidence and arrive at a different conclusion.

In general, credibility determinations are the province of the fact finder, but nonetheless should be closely and affirmatively linked to substantial evidence.  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (as amended) (citation omitted).  The Social Security rulings direct an ALJ to give reasons for a credibility finding that are supported by the record and are sufficiently specific to inform reviewers of the weight given to a claimant's statements and the reason for that weight.  *See* Social Security Ruling 96-7p.

The factors to be considered in evaluating subjective allegations of pain, "an evaluation that ultimately and necessarily turns on credibility," include: "1) whether the

objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling." *White,* 287 F.3d at 909 and n.3 (10th Cir. 2001) (as amended) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).

In determining the credibility of a claimant's testimony regarding pain, the ALJ should consider such factors as: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing Soc. Sec. Rul. 96-7p).

The ALJ recited the proper factors that he is required to consider in assessing credibility. However, much of his credibility finding rested on his determination that Lobato suffered from only a "slight" disc bulge and narrowing of the neural foramen, which the ALJ apparently thought was not enough to cause the pain described by Lobato. It is true that two doctors described the disc bulge as "slight;" however, Lobato

12

is correct that other records identify several back problems and several doctors expressly stated that the clinical findings supported his pain complaints.  *See, e.g.*, Record at 231 (Dr. Bagge: "There is no definite nerve root impingement but certainly enough that I feel it can be causing his pain and discomfort.")  The ALJ appears to be making a medical judgment about what degree of impairment should produce pain; however, Lobato only needs to show a "loose nexus" between a proven impairment and pain.

There also appears to be an inconsistency between the ALJ's determination that Lobato's reports of knee pain were not credible and the ALJ's determination that the knee injury is a severe impairment and his RFC determination which restricted use of the left extremity for kneeling and foot controls.  In addition, although Dr. Lopez opined that Lobato did not have work restrictions due to the knee injury, he did not describe the knee as "asymptomatic," but noted tenderness and discomfort.  Record at 250.

In addition, failure to aggressively pursue treatment is not necessarily a basis for an adverse credibility finding.  SSR 96-7p notes that a valid explanation might be that the individual's "daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.  The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications."  1996 WL 374186 at *8.  This appears to be the case here.  Record at 425.  Several doctors have stated that Lobato is at maximum medical improvement, meaning that his condition is stable and no additional treatment is likely to make a

13

difference in his condition.

Therefore, I find the ALJ's determination of credibility is unsupported by substantial evidence in the record.

3.        Rejection of treating physician opinion

Lobato argues that the ALJ erred in rejecting Dr. Burnside's opinion regarding Lobato's RFC, as reflected in the physical therapist's August 2002 FCE.  The ALJ rejected this because (1) Dr. Burnside's own notes reflect that Lobato had previously improved with treatment; (2) Dr. Burnside is a GP, not a specialist, and at the first two visits he did not have records from other specialists who had previously treated Lobato; (3) Dr. Burnside does not offer specific restrictions but rather states that Lobato is "unemployable;" (4) Dr. Burnside relied on the physical therapist's FCE in his conclusion and the physical therapist is not an acceptable medical source.  These were the identical statements made by the first ALJ in the decision reversed by the Appeals Council.

The opinion of a treating source is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188).  If the ALJ determines the treating source medical opinion is not entitled to controlling weight, it should not be rejected outright.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Id.* at 1300 (quoting SSR 96-2p).  These factors

are:

> (1) the length of the treatment relationship and the frequency of
>
> examination; (2) the nature and extent of the treatment relationship,
>
> including the treatment provided and the kind of examination or testing
>
> performed; (3) the degree to which the physician's opinion is supported by
>
> relevant evidence; (4) consistency between the opinion and the record as
>
> a whole; (5) whether or not the physician is a specialist in the area upon
>
> which an opinion is rendered; and (6) other factors brought to the ALJ's
>
> attention which tend to support or contradict the opinion.

*Id.* at 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th

Cir. 2001)).

If the ALJ rejects the opinion of a treating medical source completely, "he must

then give 'specific legitimate reasons' for doing so." *Watkins,* 350 F.3d at 1301. "In

choosing to reject the treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's

opinion outright only on the basis of contradictory medical evidence and not due to his

or her own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*,

366 F.3d 1078, 1082 (10th Cir. 2004) (citations omitted).

I agree that several of the grounds the ALJ relied on for rejecting Dr. Burnside's

opinion are invalid.  The determination of Lobato's functional abilities in the FCE is not

inconsistent with previous improvement or relief from pain with medication.  Similarly,

that Dr. Burnside did not have other records during the first two visits is irrelevant,

since the opinion was not formed until later.  It appears that both he and the physical therapist reviewed other records in assessing Lobato's limitations.  I also agree with Lobato that even if Dr. Burnside's opinion that Lobato is "unemployable" is outside of his expertise, his specific medical findings on Lobato's limitations should not be rejected out of hand.

The ALJ erred in his rejection of Dr. Burnside's opinion in that the ALJ failed to consider at least one *Watkins v. Barnhart* factor, specifically the types of examinations performed by Dr. Burnside and the tests performed by the physical therapist, which are documented.  It is also not clear whether the ALJ considered the consistency between Dr. Burnside's assessment and the record as a whole.

Plaintiff's remaining arguments on appeal are variations on the issues discussed above and it is unnecessary to address them.

### Conclusion

For the reasons discussed above, I find that the Commissioner's determination that Lobato is not disabled is not supported by substantial evidence in the record as a whole and is not based on correct legal standards.  Accordingly, it is ORDERED that this case is REVERSED AND REMANDED to the Commissioner pursuant to 42 U.S.C. Section 405(g) for further proceedings consistent with this Order.

DATED at Denver, Colorado, on March 30, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge

16